# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| FIELDTURF USA, INC., a Florida corporation; TARKETT INC., a Canadian corporation,<br><br>        Plaintiffs,<br>  v.<br><br>UBU Sports, Inc., a Delaware corporation,<br><br>        Defendant. | Case No. 1:16-cv-5572<br><br>**JURY DEMAND** |

## COMPLAINT FOR PATENT INFRINGEMENT

The Plaintiffs, FieldTurf USA, Inc. and Tarkett Inc. (collectively "FieldTurf"), for their Complaint against UBU Sports, Inc. ("Defendant" or "UBU Sports"), state as follows:

## NATURE OF THE ACTION

1. This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code, Sections 100 *et seq.*, involving United States Patent No. 6,723,412 ("the '412 patent"). A true and correct copy of the '412 patent is attached as Exhibit A.

2. This action arises out of Defendant UBU Sports' ongoing, unlawful and willful infringement of the '412 patent through its offers to sell, sales and installations of synthetic turf surfaces in the United States that infringe the '412 patent.

## THE PARTIES

3. Plaintiff FieldTurf USA, Inc. is a corporation organized and existing under the laws of the State of Florida, with its principal place of business at 7445 Côte-de-Liesse Road, Montreal, QC H4T 1G2, Canada. FieldTurf USA, Inc. manufactures, sells and installs synthetic

turf products throughout the United States, including in this District.

4. Plaintiff Tarkett Inc. is a corporation organized and existing under the laws of Canada, with its principal place of business at 1001 Yamaska Street East Farnham, QC J2N 1J7, Canada.

5. Tarkett Inc. is the owner by assignment of the '412 patent.

6. FieldTurf USA, Inc. is and has been at all relevant times the exclusive licensee from Tarkett Inc. under the '412 patent of the right to sell, make, use, offer to sell, import and install synthetic turf products in the United States within the scope of the '412 patent. This includes the right to sub-license others, and to initiate legal action against infringers of the '412 patent.

7. The '412 patent was duly and legally issued on April 20, 2004 by the U.S. Patent and Trademark Office ("USPTO"). The '412 patent names Jean Prevost as the inventor.

8. Upon information and belief, Defendant UBU Sports is a Delaware corporation, with its corporate headquarters and principal place of business at 3110 Woodcreek Drive, Downers Grove, Illinois 60515. UBU Sports makes, sells and installs synthetic turf surfaces.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338(a) (arising under the patent laws of the United States, 35 U.S.C. §§ 101 *et seq.*).

10. This Court has general and/or specific personal jurisdiction over Defendant UBU Sports because, upon information and belief, and according to UBU Sports' website, Defendant UBU Sports has its corporate headquarters in Downers Grove, IL (*see* Exhibit H), and, on information and belief, has installed infringing products in Illinois, including at least the Chicago

Bears Practice Facility in Lake Forest, Illinois.

11. Venue is proper in this Court under one or more of 28 U.S.C. §1391(b), 28 U.S.C. §1391(c), and 28 U.S.C. §1400(b) because Defendant's corporate headquarters is in Downers Grove, IL and, on information and belief, has committed acts of infringement in this District.

## FIELDTURF AND THE '412 PATENT

12. FieldTurf USA is the market leader in synthetic turf surfaces, with over 8000 installations worldwide. Its fields are widely used at every level of the sports industry, from high-profile fields for professional sports teams, including many NFL teams, to Division I College Football teams, as well as thousands of high school fields and municipal athletic facilities.

13. The technology embodied by the '412 patent has numerous benefits over the artificial turf surfaces that preceded it, including enhanced playing properties, increased resiliency, reduced injuries to athletes, and improved drainage properties for outdoor surfaces.

14. FieldTurf's success led several "me-too" competitors to attempt to copy and infringe the '412 patent. Competitors have also tried to attack the validity and enforceability of the '412 patent. Each of those attacks has failed.

15. For instance, after the '412 patent issued, one of FieldTurf's competitors requested that the United States reexamine the patent. After a lengthy reexamination procedure, wherein numerous U.S. and foreign prior art references were cited and analyzed, the USPTO confirmed the patentability of all of the claims of the '412 patent exactly as originally issued. A true and accurate copy of Reexamination Certificate No. 6,723,412 C1 is attached hereto as Exhibit B.

16. FieldTurf also recently enforced the '412 patent against another competitor called AstroTurf LLC. *FieldTurf USA, Inc. et al. v AstroTurf LLC*, No. 10-12492 (E.D. MI) (the "AstroTurf case"). In October 2015, a jury in the AstroTurf case unanimously found that

AstroTurf had willfully infringed claim 12 of the '412 patent, and upheld that claim as valid over AstroTurf's defenses of obviousness and anticipation. The jury awarded FieldTurf $30,000,000 for AstroTurf's willful infringement. The Court in the AstroTurf case has also as of this date rejected AstroTurf's defenses of invalidity of the '412 patent for indefiniteness and lack of enablement, and has rejected AstroTurf's allegations that the '412 patent is unenforceable.

17. Claim 12 of the '412 patent recites in full: "A synthetic grass surface, wherein the synthetic grass surface comprises a flexible backing member, parallel rows of synthetic ribbons, representing blades of grass, projecting upwardly from the backing member, the rows of ribbons spaced apart from each other, the surface including a relatively thick layer of particulate material on the backing member supporting the ribbons in a relatively upright position relative to the backing member, wherein the relationship of the length of the ribbons and the spacing between the rows is

$$2A \leq L$$

such that the length of the ribbons is at least twice the spacing; and the particulate material having a thickness T of substantially 2/3 the length of the ribbons, when A is the spacing between the rows, L is the length of the ribbon measured from the flexible backing and T is the thickness of the layer of particulate material."

18. One aspect of the claims of the '412 patent illustrated in Claim 12 is the relationship of two components of an artificial surface: the infill, which is the "particulate material" placed into a synthetic turf surface, must have a depth of "substantially two-thirds the length of the ribbons." The ribbons are the synthetic blades of grass in an artificial turf system.

19. In the AstroTurf case, the Court construed the term "substantially two-thirds the length of the ribbons," as used in the claims of the '412 patent, to mean "a level of infill that is

approximately two-thirds the height of the ribbons, where the degree of approximation covered by the claim is defined by the ability of those reasonably skilled in the art of building artificial turf surfaces to deposit particulate matter into a surface at a uniform thickness." (*FieldTurf USA Inc. v. AstroTurf LLC*, No. 2:10-cv-12492, ECF No. 101, at 2 (E.D. Mich, Nov. 1, 2011.)

20. The "degree of approximation covered by the claim as defined by the ability of those reasonably skilled in the art of building artificial turf surfaces to deposit particulate matter into a surface at a uniform thickness" is 61% to 72%. (*FieldTurf USA Inc. v. AstroTurf LLC*, No. 2:10-cv-12492, ECF No. 463, at 18, 20 (E.D. Mich, May 11, 2016.)

21. For example, an artificial turf surface in which the depth of infill is between 61%-72% of the length of the surface's ribbon meets this limitation of the claims of the '412 patent. A field with a 2.5" ribbon height and 1 ¾ inches of infill depth meets this limitation because the infill depth is 70% of the ribbon height.

## UBU SPORTS' INFRINGING ACTIVITIES

22. UBU Sports offers for sale, sells, and installs synthetic turf products in the United States, including in this District.

23. UBU Sports represents on its official website that it has several different synthetic turf product lines for sale, including the "Speed Series."

24. "Speed Series" products are synthetic grass surfaces. The UBU Sports website describes the products it sells as "synthetic turf systems." UBU Sports – Ground Gear for Athletes, http://www.ubusports.com/products/speed.htm (last visited May 13, 2016). Each "Speed Series" contains fibers called the "Grass Zone" that are intended to replicate grass. (*Id.*)

25. "Speed Series" products have a flexible backing member. Speed Series products contain an "Armour Weave" primary backing and a urethane secondary backing, both of which are

flexible. (Exhibit C, at 5.)

26. "Speed Series" products have parallel rows of synthetic ribbons, representing blades of grass, projecting upwardly from the backing member, the rows of ribbons spaced apart from each other. Each UBU Sports synthetic turf system contains green fibers intended to replicate grass. The "Speed Series" products have a 3/8" gauge, which means that the spacing between the parallel rows of green fibers is 3/8". (*Id.* at 5.)

27. "Speed Series" products contain a relatively thick layer of particulate material on the backing member supporting the ribbons in a relatively upright position relative to the backing member, wherein the relationship of the length of the ribbons and the spacing between the rows is $2A \leq L$, when A is the spacing between the rows and L is the length of the ribbon measured from the flexible backing. Each "Speed Series" product has a particulate material made of sand and rubber. (*Id.* at 2.) The ribbons on the S5-M and M6-M "Speed Series" products are 2.5 inches. (*Id.* at 5, 10.) Those fibers are supported by a mix of rubber and sand infill, installed at a depth of 1.75" (+/- 1/4"). (*Id.*) The 2.5 inch length of the ribbons ("L") in those products is more than twice the 3/8" gauge of those products ("A"), thus satisfying the claimed equation "$2A \leq L$."

28. "Speed Series" products contain a particulate material that has a thickness of substantially 2/3 the length of the ribbons. The following table illustrates at least one available ribbon height and infill level offered for sale in the United States on UBU Sports' website, each of which creates a ratio of infill depth to ribbon height of "substantially 2/3" as required by the '412 patent:

| Product – Speed Series | Infill Depth | Ribbon Height | Infill Percentage of Ribbon Height |
|---|---|---|---|
| Speed S4-M 2.25[1] | 1.5" | 2.25" | 66.7% |
| Speed S4-M 2.5[2] | 1.75" | 2.5" | 70% |

---

[1] Exhibit C, at 3 (Speed S4-M Product Data Sheet).

| Product | Infill Depth | Pile Height | Infill Percentage |
|---|---|---|---|
| Speed S5-M[3] | 1.75" | 2.5" | 70% |
| Speed M4-M 2.25[4] | 1.5" | 2.25" | 66.7% |
| Speed M4-M 2.5[5] | 1.75" | 2.5" | 70% |
| Speed M6-M[6] | 1.75" | 2.5" | 70% |

29. Each of the products identified in the above table thus meets all of the limitations of at least Claim 12 of the '412 patent.

30. UBU Sports also has another product line called the "Intensity Series." Each "Intensity Series" product has the characteristics of the "Speed Series" products discussed above, except that the particulate material is "substantially all rubber." UBU Sports – Ground Gear for Athletes, http://www.ubusports.com/products/intensity.htm (last visited May 13, 2016).

31. "Intensity Series" products contain a particulate material that has a thickness of substantially 2/3 the length of the ribbons. The following table illustrates at least one available ribbon height and infill level offered for sale in the United States on UBU Sports' website, each of which creates a ratio of infill depth to ribbon height of "substantially 2/3" as required by the '412 patent:

| Product | Infill Depth | Pile Height | Infill Percentage of Pile Height |
|---|---|---|---|
| Intensity S4-R 2.25[7] | 1.5" | 2.25" | 66.7% |
| Intensity S4-R 2.5[8] | 1.75" | 2.5" | 70% |
| Intensity S5-R[9] | 1.75" | 2.5" | 70% |
| Intensity M4-R 2.25[10] | 1.5" | 2.25" | 66.7% |
| Intensity M4-R 2.5[11] | 1.75" | 2.5" | 70% |
| Intensity M6-R[12] | 1.75" | 2.5" | 70% |

---

[2] Exhibit C, at 3 (Speed S4-M Product Data Sheet).
[3] Exhibit C, at 5 (Speed S5-M Product Spec Sheet).
[4] Exhibit C, at 8 (Speed M4-M Product Data Sheet).
[5] Exhibit C, at 8 (Speed M4-M Product Data Sheet).
[6] Exhibit C, at 10 (Speed M6-M Product Spec Sheet).
[7] Exhibit C, at 13 (Intensity S4-R Product Data Sheet).
[8] Exhibit C, at 13 (Intensity S4-R Product Data Sheet).
[9] Exhibit C, at 15 (Intensity S5-R Product Spec Sheet).
[10] Exhibit C, at 18 (Intensity M4-R Product Data Sheet).
[11] Exhibit C, at 18 (Intensity M4-R Product Data Sheet).

32. Each of the products identified in the above table thus meets all of the limitations of at least Claim 12 of the '412 patent.

33. UBU Sports also has another product line called the "Balance Series." Each "Balance Series" product has the characteristics of the "Speed Series" products discussed above, except that the particulate material may be all rubber or a combination of sand and rubber. UBU Sports – Ground Gear for Athletes, http://www.ubusports.com/products/balance.htm (last visited May 13, 2016). Further, the Balance MN69 and MP80 products are made with ½" spacing between the rows of ribbons, and ribbon that is 1.5" or 1.75". The 1.5" or 1.75" length of the ribbons ("L") in those products is more than twice the 1/2" gauge of those products ("A"), thus satisfying the claimed equation "$2A \leq L$." (*See* Exhibit C, at 23–25 (MN69 Specifications); Exhibit C, at 26–28 (MP80 Specifications).)

34. "Balance Series" products contain a particulate material that has a thickness of substantially 2/3 the length of the ribbons. The following table illustrates at least one available ribbon height and infill level offered for sale in the United States on UBU Sports' website, each of which creates a ratio of infill depth to ribbon height of "substantially 2/3" as required by the '412 patent:

| Product | Infill Depth | Pile Height | Infill Percentage of Pile Height |
|---|---|---|---|
| Balance MN65-M[13] | 1" | 1.5" | 66.7% |
| Balance MN65-R[14] | 1" | 1.5" | 66.7% |
| Balance MN69-M[15] | 1.25" | 1.75" | 71.4% |
| Balance MN69-R[16] | 1.25" | 1.75" | 71.4% |
| Balance MN69-P[17] | 1.25" | 1.75" | 71.4% |

---

[12] Exhibit C, at 20 (Intensity M6-R Product Spec Sheet).
[13] Exhibit C, at 21 (Balance MN65-M Product Spec Sheet).
[14] Exhibit C, at 22 (Balance MN65-R Product Spec Sheet).
[15] Exhibit C, at 23 (Balance MN69-M Product Spec Sheet).
[16] Exhibit C, at 24 (Balance MN69-R Product Spec Sheet).
[17] Exhibit C, at 25 (Balance MN69-P Product Spec Sheet).

8

| | | | |
|---|---|---|---|
| Balance MP80-M[18] | 1.25" | 1.75" | 71.4% |
| Balance MP80-R[19] | 1.25" | 1.75" | 71.4% |
| Balance MP80-P[20] | 1.25" | 1.75" | 71.4% |

35. Each of the products identified in the above table thus meets all of the limitations of at least Claim 12 of the '412 patent.

36. UBU Sports' also has another product called the "Accreditation Series MF60-M." The product has the characteristics of the "Speed Series" products discussed above, except that it is made with ½" spacing between the rows of ribbons, and ribbon that is 2.375". The 2.375" length of the ribbons ("L") in that product is more than twice the 1/2" gauge of that product ("A"), thus satisfying the claimed equation "$2A \leq L$."

37. The "Accreditation Series MF60-M" contains a particulate material that has a thickness of substantially 2/3 the length of the ribbons. The following table illustrates at least one available ribbon height and infill level offered for sale in the United States on UBU Sports' website, which creates a ratio of infill depth to ribbon height of "substantially 2/3" as required by the '412 patent:

| Product | Infill Depth | Pile Height | Infill Percentage of Pile Height |
|---|---|---|---|
| Accreditation Series MF60[21] | 1.5625" | 2.375" | 65.8% |

38. The product identified in the above table thus meets all of the limitations of at least Claim 12 of the '412 patent.

39. Upon information and belief, UBU Sports offers for sale each of the above-identified products in the United States, at least from its official website.

40. Apart from offering for sale at least the products discussed above, upon

---

[18] Exhibit C, at 26 (Balance MP80-M Product Spec Sheet.
[19] Exhibit C, at 27 (Balance MP80-R Product Spec Sheet).
[20] Exhibit C, at 28 (Balance MP80-P Product Spec Sheet).

9

information and belief, UBU Sports has actually manufactured and/or installed infringing turf fields, including in high-profile installations.

41. On its website, UBU Sports represents that it has installed its Speed Series S5-M product at the following NFL facilities:

   a. Arizona Cardinals Practice Facility (Tempe, AZ)

   b. Chicago Bears Practice Facility (Lake Forest, IL)

   c. Cincinnati Bengals Paul Brown Stadium (Cincinnato, OH)

   d. Denver Broncos Practice Facility (Denver, CO)

   e. Houston Texans Practice Facility (Houston, TX)

   f. Minnesota Vikings Practice Facility (Eden Prairie, MN)

   g. NY Jets/Giants Met Life Stadium (East Rutherford, NJ)

42. Upon information and belief, and according to UBU Sports' website, each and every one of the these installations of the Speed Series S5-M synthetic turf product contains the product characteristics described above for this product and constitutes an infringing sale and use under the '412 patent.

43. On its website, UBU Sports represents that it has installed or will install its infringing Intensity Series S5-M product at the following NFL facilities:

   a. Minnesota Vikings U.S. Bank Stadium (Minneapolis, MN)

   b. New Orleans Saints Superdome (New Orleans, LA)

   c. New Orleans Saints Training Facility (New Orleans, LA)

---

[21] Exhibit C, at 29 (Accreditation Series MF60 Product Spec Sheet).

       d. Pittsburgh Steelers Training Facility (Pittsburgh, PA)

44. Upon information and belief, and according to UBU Sports' website, each and every one of the these installations of the Intensity Series S5-M synthetic turf product contains the product characteristics described above for this product and constitutes an infringing sale and use under the '412 patent.

45. As further evidence of UBU Sports' infringing sales under the '412 patent, FieldTurf attaches as Exhibit D a Request for Proposal ("RFP") related to a synthetic turf installation at Dominican University of California. The RFP specifies a pile height of 2.25" and infill depth that is "within 3/4" of top of fiber." (Exhibit D at 2.) The RFP thus calls for an infill depth to pile height ratio of 66.7%, which infringes the '412 patent as discussed above. On information and belief, and according to UBU Sports' website, UBU Sports won the bid and installed a field at Dominican University of California. That installation constitutes an infringing sale and use under the '412 patent.

46. As further evidence of UBU Sports' infringing sales, FieldTurf attaches as Exhibit E to its Complaint a RFP for Panhandle ISD. The RFP specifies a pile height of 2 1/2" (Exhibit E at 4, §2.02(B)), and an infill depth of 1 3/4". (*Id.* at 5, §3.03(F).) The RFP thus calls for an infill depth to pile height ratio of 70%, which infringes the '412 patent. On information and belief, UBU Sports won the bid and installed a field at Panhandle ISD. That installation constitutes an infringing sale and use under the '412 patent.

47. Upon information and belief, FieldTurf believes that discovery will reveal additional products that UBU sells and offers to sell that infringe at least Claim '12 of the '412 patent, as well as additional infringing installations that UBU Sports has already completed. Accordingly, the specific acts identified herein are not to be deemed an exclusive list of infringing

acts by Defendant UBU Sports.

48. If UBU Sports does not sell or install synthetic turf fields directly (including but not limited to the products discussed in paragraphs 22 to 47), upon information and belief, UBU Sports (i) induces others to sell or install them and/or (ii) contributes to the infringement of others by selling components for use in the accused infringing products that have no substantial non-infringing uses.

49. The synthetic turf industry is highly competitive. Due to the nature, size, and expense of synthetic turf products, there is a finite number of fields constructed each year, so UBU Sports' infringement has already damaged FieldTurf considerably and irreparably, and will continue to harm FieldTurf until its infringement is stopped.

### FIELDTURF'S CONTACTS WITH UBU SPORTS ABOUT THE '412 PATENT

50. On December 7, 2015, counsel for FieldTurf sent a letter addressed to Mark Nicholls, then CEO of UBU Sports, attaching a copy of the '412 patent and informing him that at least the S5-M and M6-M Speed Series products discussed above infringe the '412 patent. (Exhibit F, December 7, 2015 Letter.) FieldTurf told Mr. Nicholls that the publicly available specifications on its website for both products indicate that each has an infill depth of 1.75" and a pile height of 2.5", *i.e.*, an infill ratio of 70% that is within the "substantially two-thirds" ratio protected by the '412. FieldTurf also indicated it believed those products met all of the other limitations of at least Claim 12 of the '412. FieldTurf invited Mr. Nicholls to contact counsel for FieldTurf, but he did not do so. Nor did FieldTurf receive any other response to the letter.

51. Having received no response, FieldTurf sent an additional letter on February 12, 2016, reiterating that UBU Sports' was infringing the '412 patent. Again, UBU Sports did not respond. (Exhibit G, February 12, 2016 Letter.)

## COUNT I — PATENT INFRINGEMENT

52. FieldTurf repeats and incorporates by reference all of the allegations from Paragraphs 1 through 51 above, as if fully set forth herein.

53. Based upon the acts complained of herein, Defendant UBU Sports has directly and/or indirectly infringed the '412 patent in violation of 35 U.S.C. §271(a), (b) and (c).

54. As a result of Defendant UBU Sports' infringement, FieldTurf is entitled to damages under 35 U.S.C. § 284 adequate to compensate for the infringing UBU products.

55. As a result of Defendant UBU Sports' infringement, FieldTurf is entitled to permanent injunctive relief under 35 U.S.C. § 283, to ensure that Defendant UBU Sports ceases offering to sell, selling, making and/or importing infringing products.

56. Defendant UBU Sports has actual knowledge of the '412 patent based at least on the letters FieldTurf sent it beginning in December 2015, which included a copy of the '412 patent and a specific description of why FieldTurf believes UBU Sports' products infringe. UBU Sports has nonetheless elected to disregard FieldTurf's patent rights by continuing to infringe the '412 patent. Such infringement is willful, entitling FieldTurf to recover treble damages pursuant to 35 U.S.C. § 284.

57. Defendant UBU Sports' willful infringement of the '412 also makes this an exceptional case, entitling FieldTurf to recover its attorneys' fees under 35 U.S.C. § 285.

## RELIEF REQUESTED

WHEREFORE, the Plaintiffs, FieldTurf USA, Inc. and Tarkett Inc., request a judgment in their favor and against the Defendant, UBU Sports, and request that this Court:

A. Order, adjudge and decree that Defendant UBU Sports has infringed the '412 patent;

B. Issue a permanent injunction prohibiting UBU Sports and all of its representatives, agents, servants, employees, related companies, successors and assigns, and all others in privity or acting in concert with it, from infringing any claim of the '412 patent, including, but not limited to, further infringements by offering to sell, selling, installing, importing and/or directing the installation of any synthetic turf product that infringes any claim of the '412 patent;

C. Award damages for all infringements by UBU Sports of the '412 patent;

D. Declare this case as exceptional within the meaning of 35 U.S.C. § 285 and award FieldTurf its attorneys' fees, costs, and expenses that it incurs in prosecuting this action; and

E. Provide any further relief as this Court may deem equitable and proper.

## JURY DEMAND

In accordance with Fed. R. Civ. P. 38 and 39, FieldTurf asserts its rights under the Seventh Amendment to the United States Constitution and demands a trial by jury on all issues that may be so tried.

Dated: May 25, 2016

Respectfully submitted,

WINSTON & STRAWN LLP

By: __/s/ Kevin E. Warner_____

    Michael L. Brody
    Kevin E. Warner
    Patrick R. O'Meara
    WINSTON & STRAWN LLP
    35 W. Wacker Dr.
    Chicago, Illinois 60601
    Phone: 312-558-5600
    Fax: 312-558-5700
    E-mail: kwarner@winston.com

*Attorney for Plaintiff*